## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| KALP KHAMESRA, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>HISENSE USA CORPORATION,<br><br>     Defendant. | Case No. _____<br><br>**CLASS ACTION**<br>**COMPLAINT**<br><br><br>**JURY DEMANDED** |

## CLASS ACTION COMPLAINT

1. Plaintiff Kalp Khamesra, individually and on behalf of all others similarly situated, by and through counsel, brings this action against Hisense USA Corporation ("Hisense"). Plaintiff's allegations herein are based upon personal knowledge and belief as to their own acts and upon the investigation of his counsel, including information received from class members who have experienced Hisense's televisions either (i) failing to have quantum dot light-emitting diode technology ("QLED") or (ii) having QLED technology present in such negligible amounts that it does not meaningfully contribute to the performance or display output of the television thereby making the presence of QLED technology functionally irrelevant to the performance or display of the television despite being advertised as having such technology as described herein, and information and belief as to all other matters.

## INTRODUCTION

2. Plaintiff brings this action individually and on behalf of a Class of similarly situated owners of Hisense QLED televisions. This action arises from Hisense's false and deceptive advertising regarding the QLED technology within Hisense televisions marketed as containing

1

QLED—sometimes also called "QD"—technology. In particular, despite advertising that certain models of its televisions contained QLED or QD technology, those televisions did not actually contain the QLED or QD technology, or otherwise contained the technology in such negligible amounts as to fail to meaningfully contribute to the performance or display output of the television.

3.      Hisense markets and advertises that certain models of its televisions contain QLED or QD technology, including "mini-LED QLED" technology. These models include, but are not necessarily limited to, the QD5 series, the QD6 series, QD65 series, the QD7 series, the U7 series, and the U7N series.[1]

4.      Hisense has long been aware that its QLED televisions do not have the advertised QLED technology (or include negligible amounts of the technology as to not provide the advertised benefits). Notwithstanding its longstanding knowledge, Hisense continues to advertise that certain of its QLED televisions have QLED technology when they, in fact, do not contain QLED technology or include the technology in such negligible amounts as to not provide the advertised benefits. Through this conduct, Hisense engages in unfair, deceptive, and fraudulent conduct with the intent to deceive the consuming public.

5.      As a result of Hisense's unfair, deceptive, and/or fraudulent business practices, owners of Hisense QLED televisions, including Plaintiff, have suffered ascertainable losses. The unfair and deceptive practices committed by Hisense were conducted in a manner giving rise to substantial aggravating circumstances.

6.      Had Plaintiff and other Class Members known that the QLED televisions did not contain QLED technology or contained the technology in such negligible amounts as to not

---

[1] *See, e.g.*, https://www.hisense-usa.com/televisions/all-tvs (last accessed Apr. 9, 2025).

provide the advertised benefits, they would not have bought the Hisense QLED televisions, or else would have paid substantially less for them.

7.     Hisense advertises that its televisions include QLED technology, despite its knowledge to the contrary, in order to charge a premium price to consumers. Accordingly, Plaintiff and Class Members paid a premium for technology that the televisions did not contain (or contained in such negligible amounts as to not provide the advertised benefits). Plaintiff and Class Members suffered an injury in fact, incurred damages, and otherwise have been harmed by Hisense's conduct.

8.     Accordingly, Plaintiff brings this action to redress Hisense's violations of Illinois's consumer fraud statute, fraud, and negligent misrepresentation.

## THE PARTIES

9.     Plaintiff Kalp Khamesra is a resident of the state of Illinois who resides in Chicago, Illinois. On or about October 30, 2024, while a resident of Illinois, Plaintiff Khamesra purchased a new Hisense television for personal use at Costco.

10.     Defendant Hisense USA Corporation is a Georgia Corporation, with its principal place of business located within Forsyth County at 7310 McGinnis Ferry Road, Suwanee, Georgia 30024. Accordingly, Defendant is a resident of the state of Georgia.

## JURISDICTION AND VENUE

11.     This Court has original subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The aggregated claims of the individual class members exceed the sum or value of $5,000,000.00, exclusive of interest and costs; there are more than 100 putative class members; and at least one putative class member is from a state different from Hisense.

12.     This Court has personal jurisdiction over Hisense because it conducts substantial business in this District and a substantial part of the acts and omissions complained of occurred in this District.

13.     Venue is proper in the judicial district pursuant to 28 U.S.C. § 1391(b), and Civil Code Section 1780, subdivision (c) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Hisense is authorized to conduct business in this District; it has availed itself of the laws and markets within this District; it does substantial business in this District; and it is subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

**A.      Hisense Televisions**

14.     Hisense is headquartered in Forsyth, Georgia and sells televisions throughout the United States through numerous retailers such as Amazon, Best Buy, Target, Walmart, Costco, and Sam's Club.[2]

15.     Hisense is one of the leading sellers of televisions in the United States and in the second quarter of 2024 was second only to Samsung in US television sales.[3]

16.     Televisions are a product in high demand sold at various prices for a substantial profit.

17.     The television market changes frequently and is highly competitive. Hisense sells its televisions through retailers (both at brick-and-mortar stores and online), which would be

---

[2] https://www.hisense-usa.com/authorized-retailers (last accessed Apr. 9, 2025) (listing all authorized retailers of Hisense televisions).

[3] https://www.cnbc.com/2024/11/05/chinas-hisense-aims-to-become-the-no-1-tv-company-in-the-us-within-2-years.html  (last accessed Apr. 9, 2025).

expected to cease offering Hisense products if those products could not be sold at a profit or if consumers preferred a competing brand.

18.     Consumer demand is affected by the technical specifications of televisions, including the display technology specification.

19.     Thus, to remain competitive and stimulate consumer demand, Hisense must advertise attractive technical specifications at competitive prices. If consumers were to view Hisense televisions as less technologically advanced and choose another brand, it would have a materially adverse effect on Hisense's sales and its financial condition.

**B.      Quantum Dot Display Technology: A Primer**

20.     Today's standard television is commercially known as a Light-emitting diode ("LED") television. Such LED televisions utilize a Liquid-crystal display ("LCD") and many LEDs to create images on the television.

21.     LEDs serve as the backlight for the television, emitting different colors and brightness levels when electrical currents pass through them.

22.     The LCD is placed in front of the backlight and allows or blocks light from the LEDs, as dictated by the image to be displayed on the screen.

23.     The LCD is divided into millions of tiny sections, called pixels, that can be turned on or off to allow light and color to pass through from the backlight and create a particular image on the television.

24.     LED televisions are commonplace in the television market today largely in part to their picture quality which provides for better brightness, contrast, and a wider color spectrum than Cathode Ray Tube televisions, which LEDs have replaced in the market.

25.     A recent development in LED televisions has been the implementation of quantum dot technology.

26.     A quantum dot is a human-made nanoparticle that ranges in size. The size of a quantum dot determines the wavelength of light it emits and, in turn, the color it emits.

27.     Quantum dots are made using semiconductor materials such as metals.

28.     Quantum dot technology is implemented in televisions by applying the quantum dots to a sheet of film or panel that sits between the LED backlight and the LCD.

29.     Quantum dots filter the light and color from the LEDs to improve the capabilities of the LCD and allow it to reveal a wider and more saturated range of colors compared to a standard LED television.

30.     As a result of the improvement in color and saturation from quantum dot technology, several major television brands have implemented this technology into their televisions, including Samsung, Vizio, and LG.

31.     Televisions implementing quantum dot technology are marketed as QLED or QD televisions.

32.     In order to be considered a QLED (or QD) television, the television must actually include quantum dot technology, or otherwise include quantum dot technology in a sufficient enough manner for the technology to actually provide a meaningful improvement in the television's performance. Any television that fails to include quantum dot technology (or includes only a negligible amount of the technology such that it fails to provide a meaningful improvement in performance) is *not* a QLED or QD television—and is only an LED television.

33.     Notably, because quantum dots are produced through a chemical process, the technology leaves known chemical markers. Thus, it is simple to verify whether the technology is

actually present in a television or is present in sufficient amounts as to provide the advertised benefits and improvement in performance. A television that does not bear these chemical markers would only be an LED television.

34.     An LED television therefore cannot, without the existence of quantum dot technology, be considered a QLED or QD television. And, even if QLED technology is present in the television, if it does not meaningfully contribute to the performance or display of the television, it similarly cannot truly be considered a QLED or QD television.

**C.     Hisense's Practice of Falsely Advertising Quantum Dot Display Technology**

35.     Hisense manufactures QLED televisions and has been doing so since at least 2017.

36.     Since then, Hisense has introduced television models and claimed they were QLED or QD televisions even though they did not include quantum dot technology or included QLED technology that is not meaningfully contributing to the performance or display technology in these television models that would have legitimately allowed them to make that claim.

37.     Hisense markets directly to consumers through Hisense-usa.com. Upon information and belief, Hisense approves and controls the content of Hisense-usa.com, including the statements about quantum dot technology at issue here, from its headquarters and principal place of business in Forsyth County, Georgia.

38.     Hisense also sells its televisions through other retailers in the United States, both in store and online, including through Amazon, Best Buy, Walmart, Costco, Sam's Club, Target, and many others.[4]

---

[4] https://www.hisense-usa.com/authorized-retailers (last accessed Apr. 9, 2025) (listing all authorized retailers of Hisense televisions).

39.     Upon information and belief, Hisense formulates, approves, controls, and disseminates its advertising and marketing, including the statements about the quantum dot technology at issue here, at its headquarters in Forsyth County, Georgia. Hisense's executives and marketing personnel are employed at Hisense's Georgia location.

40.     For example, on Hisense's website, the product page for a QD6 series model television includes nomenclature highlighting the inclusion of QLED technology and makes further representations that the television includes QLED technology. This same nomenclature and identical representations regarding the inclusion of QLED technology are included on the product page for a QD5 series model television on Hisense's website:[5]



(continued on next page)

---

[5] https://www.hisense-usa.com/televisions/hisense-55-qd6-series-qled-hisense-fire-tv-55qd65nf-hisense (last accessed Apr. 9, 2025); https://www.hisense-usa.com/televisions/hisense-65-class-u7-series-mini-led-uled-4k-google-tv-65u7n (last accessed Apr. 9, 2025).



41.     On its website, Hisense claims that its QLED televisions will "dramatically increase the color space and improve color saturation"[6] and the television's "display . . . dramatically improve[s] your watching and playing experience."[7]

> The Hisense QD6 series includes QLED Quantum Dot Color to dramatically increase the color space and improve overall color saturation for everything you watch. With the power of Fire TV built in, find, stream, and watch what you want. Use the included Voice Remote with Alexa to easily change channels, launch apps, search for titles, and more. The QD6 series also features Dolby Vision HDR and Dolby Atmos audio technology, bringing out all the detail, for an immersive audio and video experience.

(continued on next page)

---

[6] https://www.hisense-usa.com/televisions/hisense-55-qd6-series-qled-hisense-fire-tv-55qd65nf-hisense (last accessed Apr. 9, 2025).

[7] https://www.hisense-usa.com/televisions/hisense-65-class-u7-series-mini-led-uled-4k-google-tv-65u7n (last accessed Apr. 9, 2025).



42.     Hisense further represents that its QLED technology will allow one to "see color like you've never seen it before."[8] These representations are made, for example, on the product page for the QD6 and U7N series model televisions.

---

[8] https://www.hisense-usa.com/televisions/hisense-55-qd6-series-qled-hisense-fire-tv-55qd65nf-hisense (last accessed Apr. 9, 2025); https://www.hisense-usa.com/televisions/hisense-65-class-u7-series-mini-led-uled-4k-google-tv-65u7n (last accessed Apr. 9, 2025).



43.     Hisense will often repeat misleading and false statements in specification sheets, or "Spec Sheets," on their website.

44.     Hisense's marketing and listing of technical specifications of so-called QLED or QD televisions is misleading and untrue.

45.     Not only are Hisense's statements untrue and misleading, but whether a television actually has quantum dot technology cannot be readily verified by the consumer, especially prior to purchase.

46.     Hisense markets various models of its televisions in this manner, claiming that they contain quantum dot technology: the QD5, the QD6, the QD65, the QD7, the U7, and the U7N series models of televisions. However, upon information and belief, none of these television models contain QLED or QD technology or the QLED or QD technology is negligible such that the QLED technology fails to provide a meaningful improvement in performance or the advertised benefits

47.     Hisense's misleading and untrue statements about the quantum dot technology of its televisions are likely to deceive consumers and are intended to try and influence their decisions on whether to purchase a Hisense television.

48.     Upon information and belief, Hisense also made these misleading and untrue statements so that retailers would offer Hisense's televisions for sale in store and online and to

motivate them to recommend Hisense's televisions to consumers. If Hisense's retailers did not adequately display or offer for sale Hisense's televisions, then Hisense's net sales would have decreased, and its business would have been harmed.

49.     Hisense's misleading and untrue statements about the technical specifications and performance of its televisions allow Hisense to sell its lesser-quality product at a higher price and allows Hisense to realize a profit it may not have otherwise made if it were truthful regarding the performance capabilities of its televisions.

<u>**PLAINTIFF'S FACTUAL ALLEGATIONS**</u>

**<u>Plaintiff Kalp Khamesa</u>**

50.     Plaintiff Kalp Khamsera purchased a new 75-inch U7N model Hisense television on October 30, 2024, online from Costco's website for approximately $899.99.

51.     For the specific model Plaintiff Khamesra purchased, Costco's website advertises and markets that the television—which advertising, upon information and belief, is developed and controlled by Hisense—includes "QLED Quantum Dot Color" technology, which "dramatically increase[s] your watching and playing experience." Further, it states that customers will "[s]ee color like [they've] never seen it before," claiming that the QLED technology "significantly broadens the range of color you perceive to create over a billion individual shades."[9]

---

[9] "Product Details," https://www.costco.com/hisense-75%22-class---u75-series---4k-uhd-mini-led-lcd-tv---allstate-3-year-protection-plan-bundle-included-for-5-years-of-total-coverage*.product.4000284739.html (last accessed Apr. 9, 2025).

52.     These representations precisely repeat the claims included on Hisense's website when describing other QLED or QD television models. For example, the U7 model, which is available directly from Hisense's website, includes these same claims.[10]

53.     In every instance, Hisense claims not only that the television contains QLED or QD technology, but that it meaningfully contributes to the television's performance. Indeed, the inclusion of QLED or QD technology is a central part of the marketing and advertising of the television.

54.     Before he purchased this Hisense television, Plaintiff Khamesra reviewed advertising about the television on Costco's website, which stated that the television was in fact a QLED television. Plaintiff Khamesra also compared the television to other QLED or QD televisions at similar price points prior to purchase.

55.     The primary reason Plaintiff Khamesra purchased the television was because it contained QLED technology, including the advertised performance benefits of that technology, such as providing better picture quality and more vivid colors, as compared to a standard LED television.

56.     As a result of Hisense's false and misleading statements, Plaintiff Khamesra paid more for his Hisense television than he otherwise would have paid had the television not been advertised as containing QLED or QD technology (or otherwise containing non-negligible QLED or QD technology sufficient to provide the advertised benefits of improved performance). Put simply, had Hisense truthfully marketed and advertised television, by disclosing its true quality,

---

[10] *E.g.*, https://www.hisense-usa.com/televisions/hisense-75-class-u75-series-mini-led-qled-4k-google-tv-75u75n (last accessed Apr. 9, 2025). Upon information and belief, the U7 model available on Hisense's website is the same model that is marketed and sold as the U75 model through other retailers, including Costco.

character, and nature—that is, that the television did, in fact, not contain QLED or QD technology (or otherwise contained the technology in such negligible amounts as to not provide the advertised benefits of improved performance)—he would not have purchased the television, or else would have paid substantially less for it.

57.     If Plaintiff Khamesra's television contained QLED or QD technology as advertised, he would purchase a Hisense television in the future. Alternatively, if the Court were to issue an injunction ordering Hisense to comply with advertising and consumer protection laws, Plaintiff Khamesra would likely purchase a Hisense television in the future.

## CLASS ALLEGATIONS

58.     Plaintiff brings this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Federal Rule of Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the provisions of Rule 23.

59.     Plaintiff seeks to represent the following "Class":

> All individuals who, in the state of Illinois, during the class period, purchased a Hisense QD5, QD6, QD65, QD7, U7, or U7N series model television, which was marketed as containing QLED or QD technology and which did not contain QLED or QD technology, or contained QLED or QD technology in such negligible amounts as to not provide the advertised benefits.

60.     Plaintiff seeks certification of the Class for all causes of action. Plaintiff reserves the right to modify the class definitions or add sub-classes as necessary prior to filing a motion for class certification.

61.     The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling and accrual issues, and ending on the date of entry of judgment.

62.     Excluded from the Class are Hisense; any affiliate, parent, or subsidiary of Hisense; any entity in which Hisense has a controlling interest, any officer, director, or employee of Hisense; any successor or assign of Hisense; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

63.     <u>Numerosity/Ascertainability</u>: The members of the Class are so numerous that joinder of all members would be unfeasible and impracticable. The exact number of Class members is unknown to Plaintiff at this time; however, it is estimated that there are more than one thousand (1,000) individuals in the Class. The identity of such membership is readily ascertainable from Hisense's records and the records of its retailers.

64.     <u>Common Questions of Law and Fact Predominate</u>: There are common questions of law and fact as to Plaintiff and all other similarly situated individuals, which predominate over questions affecting only individual members including, without limitation, the following:

    a.     Whether Hisense's QLED or QD televisions contain quantum dot technology as advertised, or whether Hisense's QLED or QD televisions contain quantum dot technology in such negligible amounts that they do not provide the advertised benefits.

    b.     Whether Hisense's statements and representations about the quantum dot technology of its televisions are false or misleading.

    c.     Whether Hisense knew or should have known that its QLED or QD televisions did not contain QLED or QD technology (or contained the technology in negligible amounts as to not provide the advertised benefits).

d.  Whether Hisense knew or should have known that its statements and representations about the quantum dot technology of its televisions are false or misleading.

e.  Whether Hisense concealed from or failed to disclose to Plaintiff and Class Members that its televisions did not contain QLED or QD technology (or contained the technology in negligible amounts as to not provide the advertised benefits).

f.  Whether Hisense engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing its televisions as having QLED or QD technology when, in fact, they did not contain the technology (or contained the technology in negligible amounts as to not provide the advertised benefits).

g.  Whether Hisense engaged in false or misleading advertising by selling, packaging, labeling, and/or marketing its televisions as having QLED or QD technology when, in fact, they did not contain the technology (or contained the technology in negligible amounts as to not provide the advertised benefits).

h.  Whether Hisense has violated consumer protection statutes.

i.  Whether Hisense has been unjustly enriched.

j.  Whether Plaintiff and Class Members either paid a premium for the televisions that they would not have paid but for Hisense's false representations or would not have purchased the televisions at all.

k.  Whether Plaintiff and Class Members have been injured by Hisense's

misconduct, and the proper measure of their losses as a result of those injuries.

l.   Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount and nature of such damages.

m.   Whether Plaintiff and Class Members are entitled to injunctive, declaratory, or other equitable relief, including enjoining Hisense from selling and marketing the televisions as having QLED or QD technology when, in fact, they did not contain the technology (or contained the technology in negligible amounts as to not provide the advertised benefits).

65.   Typicality: Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Hisense television that Hisense represented and sold at a higher price by claiming it contained quantum dot technology, that, in reality, it did not contain (or contained the technology in negligible amounts as to not provide the advertised benefits).

66.   Adequacy of Representation: Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the members of the Class. Moreover, Plaintiff's attorneys are ready, willing and able to fully and adequately represent the members of the Class and Plaintiff. Plaintiff's attorneys are experienced in prosecuting class actions and consumer fraud and product liability cases and are committed to vigorously prosecuting this action on behalf of the members of the class.

67.   Predominance and Superiority: Plaintiff and Class Members have all suffered and will continue to suffer risk of harm and damages as a result of Hisense's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication

of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high given the average price point of the televisions and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Hisense's misconduct. Absent a class action, Class Members will continue to incur damages, and Hisense's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

68.     The claims presented in this case predominate over any questions of law or fact affecting individual Class Members

69.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

70.     Hisense's misconduct in marketing the televisions arises out of a common omission or failure to act, which has a uniform effect on Plaintiff and all Class Members. Plaintiff seeks damages as well as preliminary and permanent injunctive relief and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to require Hisense to stop its unlawful conduct.

71.     Hisense misrepresented or failed to disclose the true qualities of the televisions in the same manner to all consumers, including Plaintiff and Class Members. As a result, Hisense has acted or refused to act on grounds generally applicable to each Class Member, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of the Illinois Consumer Fraud and
Deceptive Trade Practices Act ("ICFA")
815 ILCS 505/1, *et seq.*
(On behalf of Plaintiff and the Proposed Class)**

72.     Plaintiff, individually and on behalf of the proposed Class, brings this cause of action and hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

73.     Plaintiff and Class Members are persons within the context of the ICFA, 815 ILCS 505/1(c).

74.     At all times relevant hereto, Hisense was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

75.     Plaintiff and Class Members are "consumers" who purchased Hisense televisions for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

76.     The ICFA prohibits engaging in any "unfair or deceptive acts or practices . . . in the conduct of any trade or commerce." 815 ILCS 505/2.

77.     The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS 505/2.

78.     Hisense's conduct, as described herein, took place within the state of Illinois and constituted unfair or deceptive acts or practices in the course of trade and commerce, in violation of 815 ICFA 505/1, *et seq.*

79.     Hisense engaged in deceptive trade practices in violation of the ICFA by failing to disclose and actively concealing the risks posed by the Defect.

80.     Hisense violated the ICFA and Section 2 of the UDTPA by representing that its televisions have characteristics or benefits that they do not have and that the Products "are of a particular standard, quality or grade" when they are of another. 815 ILCS 505/2; 815 ILCS 510/2(7).

81.     Hisense advertised the televisions with intent not to sell them as advertised, in violation of 815 ILCS 505/2 and 815 ILCS 510/2(9).

82.     Hisense engaged in fraudulent and/or deceptive conduct which creates the likelihood of confusion or of misunderstanding in violation of 815 ILCS 505/2 and 815 ILCS 510/2(3).

83.     Throughout the relevant period, Hisense knew or reasonably should have known that the televisions, which it advertised as containing QLED or QD technology, did not actually contain QLED or QD technology (or contained the technology in such negligible amounts as to not provide the advertised benefits).

84.     Hisense was under a duty to Plaintiff and Class Members to disclose the true nature of the Products because:

      a.     Hisense was in a superior position to know the true state of facts about the quality, character, and nature of the televisions;

      b.     Plaintiff and Class Members could not reasonably have been expected to learn or discover the true quality, character, and nature of the television, including that they were not as advertised;

      c.     Hisense knew that Plaintiff and Class Members could not reasonably have

been expected to learn or discover the true state of facts about the televisions; and

d.    Hisense actively concealed and failed to disclose the existence of the true quality, character, and nature of the televisions to Plaintiff and the Class.

85.    Hisense knew or should have known that the televisions did not contain QLED or QD technology, or otherwise contained the technology in such negligible amounts as to not provide the advertised benefits. In failing to disclose, or otherwise actively concealing, the true quality, character, and nature of the televisions, Hisense has knowingly and intentionally misrepresented material facts and breached its duty not to do so.

86.    Hisense intended that Plaintiff and Class Members would, in the course of their decision to expend monies in purchasing the televisions, reasonably rely upon the misrepresentations, misleading characterizations, and material omissions concerning the quality, character, and nature of the televisions.

87.    Plaintiff and Class Members considered the advertised QLED or QD technology included in the televisions to be material and important when deciding to purchase the televisions. The televisions' quality, character, and nature—that is, the included technology impacting the television's display and performance—are material to the average, reasonable consumer.

88.    The misrepresented facts concerning the televisions are also material because they concern central functions of the televisions (*e.g.*, the included technology that directly impacts the television's display and performance).

89.    Hisense's conduct offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused avoidable and substantial

injury to Plaintiff and Class Members (who were unable to have reasonably avoided damages through no fault of their own) without any countervailing benefits to consumers.

90.    Had Hisense disclosed the existence of the true quality, character, and nature of the televisions in its advertising and marketing, Plaintiff and Class Members would have learned of the true nature of the televisions and would have acted differently. Had Plaintiff and Class Members known about the true state of facts of the televisions, they either would not have purchased the televisions, or else would have paid substantially less for them. Accordingly, Plaintiff and Class Members overpaid for their televisions and did not receive the benefit of their bargain.

91.    Plaintiff plausibly would have learned of the true quality, character, and nature of the televisions—that is, that they lacked the advertised QLED or QD technology, or else contained the technology in such negligible amounts as to not provide the advertised benefits—had Hisense truthfully disclosed this information in its advertising and marketing. Accordingly, Plaintiff and Class Members' injuries were proximately caused by Hisense's fraudulent and deceptive business practices.

92.    As a direct and proximate result of Hisense's violations of the ICFA, as set forth above, Plaintiff and Class Members have suffered ascertainable loss of monies and property, caused by Hisense's misrepresentations and failure to disclose material information.

93.    Plaintiff, on behalf of himself and Class Members, are therefore entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs and attorneys' fees, pursuant to section 815 ILCS 505/10a of the ICFA.  Plaintiff and Class Members are also entitled to injunctive relief, seeking an order enjoining Defendant's unfair and/or deceptive acts or practices.

## SECOND CAUSE OF ACTION

### Fraud
### (On behalf of Plaintiff and the Proposed Class)

94.     Plaintiff, individually and on behalf of the proposed Class, brings this cause of action and hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

95.     Hisense knew or should have known that the televisions did not contain QLED or QD technology, or otherwise contained the technology in such negligible amounts as to not provide the advertised benefits. Despite this knowledge, Hisense failed to disclose, or otherwise actively concealed, the true quality, character, and nature of the televisions to consumers, including Plaintiff and Class Members. Such a failure to disclose, or otherwise active concealment of material facts, was intended to mislead consumers, including Plaintiff and Class Members.

96.     Plaintiff and Class Members justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidence by their purchases of the televisions.

97.     Plaintiff and Class Members were actually misled and deceived and were induced by Hisense to purchase the televisions. Had Hisense truthfully advertised the true quality, character, and nature of the televisions, Plaintiff and Class Members would have either not purchased the televisions, or else would have paid substantially less for them.

98.     As a result of Hisense's conduct, Plaintiff and the Class Members have been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

**Negligent Misrepresentation**
**(On behalf of Plaintiff and the Proposed Class)**

99.     Plaintiff, individually and on behalf of the proposed Class, brings this cause of action and hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

100.    Hisense had a duty to provide honest and accurate information to its customers so that customers could make informed decisions on the substantial purchase of a television.

101.    Hisense knew or should have known that the televisions did not contain QLED or QD technology, or otherwise contained the technology in such negligible amounts as to not provide the advertised benefits. Despite this knowledge, Hisense failed to disclose, or otherwise actively concealed, the true quality, character, and nature of the televisions to consumers, including Plaintiff and Class Members. Such a failure to disclose, or otherwise active concealment of material facts, was intended to mislead consumers, including Plaintiff and Class Members.

102.    Hisense knew or otherwise should have known, that the ordinary and reasonable consumer would be misled by Hisense's misleading and deceptive advertisements and statements, which failed to disclose and/or concealed material facts concerning the Hisense televisions that Hisense knew or should have known.

103.    Plaintiff and Class Members justifiably acted or relied upon Hisense's misrepresentations and omissions and were actually misled and deceived and induced by Hisense to purchase the televisions. Had Hisense truthfully advertised the true quality, character, and nature of the televisions, Plaintiff and Class Members would have either not purchased the televisions, or else would have paid substantially less for them.

104.    As a result of Hisense's conduct, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

**Unjust Enrichment**
**(On behalf of Plaintiff and the Proposed Class)**

105.    Plaintiff, individually and on behalf of the proposed Class, brings this cause of action and hereby adopts and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

106.    Plaintiff and Class Members conferred a benefit on Hisense by purchasing the televisions.

107.    Hisense has knowledge that this benefit was conferred upon it.

108.    As alleged herein, Hisense advertised and sold televisions to consumers with false display technology specifications, intending that consumers would rely on those misrepresentations and omissions and purchase the televisions from Hisense.

109.    Had Hisense advertised and sold televisions to consumers with the true display technology, Plaintiff would not have purchased the televisions, or else would have paid substantially less for them.

110.    Hisense's material misrepresentations and omissions allowed it to sell the televisions at a higher price than their true value, while saving money on the cost of a television with actual quantum dot technology. This conduct led Hisense to reap profits that otherwise would not have been realized and harmed Plaintiff and the Class.

111.    Plaintiff and Class Members purchased the Products without knowing the true quality, character, and nature of the televisions, which Hisense concealed and misrepresented. Accordingly, Hisense obtained money which rightfully belongs to Plaintiff and Class Members.

112.    Hisense's acts and business practices offend the established public policy of Illinois, as there is no societal benefit from false advertising, only harm. While Plaintiff and Class Members were harmed at the time of purchase, Hisense was unjustly enriched by their misrepresentations, false statements and/or material omissions.

113.    Plaintiff and Class Members were harmed when they purchased the Products as a result of Hisense's misrepresentations, false statements, and/or material omissions, as set forth herein. Plaintiff and Class Members have suffered an injury in fact, including the losses of money or property, as a result of Hisense's unfair, unlawful, and/or deceptive practices.

114.     Hisense's conduct allows them to knowingly realize substantial revenues from selling the televisions at the expense of, and to the detriment of, Plaintiff and Class Members, and to Hisense's benefit and enrichment. Hisense's retention of these benefits violates fundamental principles of justice, equity, and good conscience.

115.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Hisense for the televisions, which were not as Hisense represented them to be.

116.    Hisense has been knowingly and unjustly enriched to the detriment of Plaintiff and Class Members by collecting excess profits to which they have no right.

117.    Hisense's retention of profits is unjust because Plaintiff was deceived by false advertisements and did not receive the benefit of their bargain—that is, the purchase of a television with QLED or QD technology, or otherwise the purchase of a television with non-negligible QLED or QD technology sufficient to provide the advertised benefits.

118.    It would be inequitable to allow Hisense to retain these profits. Hisense should be required to make Plaintiff and Class Members whole.

119.    Plaintiff, on behalf of themselves and Class Members, seek an order requiring Hisense to make restitution to Plaintiff and Class Members and be disgorged of all profits arising out of the sale of the televisions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief on behalf of themselves and the Classes against the Defendant:

a.    Certification of this class action and appointment of Plaintiff and his counsel to represent the Class;

b.    An order permanently enjoining Hisense from engaging in the unlawful, unfair, and fraudulent acts and practices alleged herein;

c.    An award for all actual, general, special, incidental, statutory, and punitive damages to which Plaintiff and Class Members are entitled;

d.    Disgorgement of all profits and unjust enrichment that Hisense obtained from Plaintiff and Class Members as a result of Hisense's unlawful, unfair, and fraudulent acts and practices alleged herein

e.    An award of reasonable attorneys' fees and costs to Plaintiff and Class Members;

f.    An award or pre-judgment and post judgment interest on any monetary relief; and

g.    Such other and further relief as the Court may deem appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all the claims asserted in this Complaint so triable.

DATED: April 10, 2025

/s/ *Andrea R. Gold*
Andrea R. Gold (Ill. Bar No. 6282969)
David A. McGee*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
Tel: (202) 973-9000
agold@tzlegal.com
dmcgee@tzlegal.com

Adam A. Edwards*
William A. Ladnier*
Virginia Ann Whitener (Ill. Bar No. 6337452)
**MILBERG COLEMAN BRYSON
  PHILLIPS GROSSMAN PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
aedwards@milberg.com
wladnier@milberg.com
gwhitener@milberg.com

*Counsel for Plaintiff
and the Proposed Class*

*Application for* pro hac vice *forthcoming*